# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr>
<td>

STREETSTRIDER INTERNATIONAL, LLC

                    Plaintiff,

      v.

UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; KATHERINE TAI, UNITED STATES TRADE REPRESENTATIVE; U.S. CUSTOMS AND BORDER PROTECTION; and CHRIS MAGNUS, COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION,

                    Defendants.

</td>
<td>

**Court No.: 22-00010**

</td>
</tr>
</table>

## COMPLAINT

Plaintiff StreetStrider International, LLC (hereinafter, "Plaintiff" and/or "StreetStrider"), by and through its counsel, alleges the following for its Complaint against Defendants United States of America, Office of the United States Trade Representative (hereinafter, "USTR"), Katherine Tai, in her official capacity as United States Trade Representative, U.S. Customs and Border Protection (hereinafter, "CBP" and/or "Customs"), and Chris Magnus, in his official capacity as Commissioner of Customs (collectively, "Defendants"):

1.     This action concerns the unlawful expansion of the scope of Section 301 of the Trade Act of 1974 (hereinafter, the "Trade Act"), codified at 19 U.S.C. §§ 2411 – 2417 (hereinafter, "Section 301"), by imposing a third and fourth round of tariffs on products imported from the People's Republic of China (hereinafter, "China"), covered under what have commonly been referred to as "List 3" items (accounting for an approximate trade value of $200 billion) and "List 4A" items (accounting for an approximate trade value of over $100 billion). *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (publishing List 3); *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304, 43,306-29 (Aug. 20, 2019) (publishing List 4A).

2.      In addition, aside from being in violation of the Trade Act, the List 3 and List 4A additional tariffs are also unconstitutional, because they were imposed in violation of Article I, Section 8, Clause 1, of the United States Constitution, as well as the due process requirements provided for under its Fifth Amendment.

3.      Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that this Court set aside Defendants' actions as *ultra vires*, unconstitutional, and otherwise contrary to law, as well as order Defendants to refund any duties paid by Plaintiff pursuant to List 3 and/or List 4A, with the appropriate interest provided for under the law.

<u>**JURISDICTION**</u>

4.      This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" on the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).

5.      In addition, with respect to the claims and allegations that the List 3 and List 4A tariffs were unlawful and unconstitutional because they were "duties" levied and collected in violation of the United States Constitution, the Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(A), which provides for the Court's exclusive jurisdiction over

actions arising out of any law providing for "revenue from imports or tonnage." 28 U.S.C. § 1581(i)(1)(A).

**PARTIES**

6.      Plaintiff StreetStrider is an importer of various goods subject to List 3 and/or List 4A tariffs.

7.      Defendant United States of America received the disputed additional tariffs imposed by Lists 3 and 4A and is, thus, the statutory defendant listed under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(A) and (B).

8.      Defendant The Office of the United States Trade Representative is an executive agency of the United States, charged with investigating foreign countries' trade practices under Section 301 and implementing "appropriate" responses, as dictated by the results of such investigations, subject to the direction of the President of the United States. USTR conducted the Section 301 investigation subject to this action (hereinafter, "Section 301 Investigation" and/or "Investigation") and is responsible for proposing and implementing the additional tariffs imposed under Lists 3 and 4A and collected by Defendant Unites States.

9.      Defendant Ambassador Katherine C. Tai currently holds the position of United States Trade Representative and serves as the director of USTR. In her official capacities, Defendant Tai is responsible for the oversight and administration of U.S. trade policy with China, including the actions taken under Section 301 of the Trade Act regarding List 3 and List 4A.

10.     Defendant U.S. Customs and Border Protection is the federal agency responsible for determining what duties and in what amount duties are owed, collecting such duties and, if applicable, refunding duties unlawfully imposed and paid by importers, such as StreetStrider, on imported goods, including the additional tariffs imposed by Lists 3 and 4A.

11.     Finally, Defendant Chris Magnus currently holds the position of Commissioner of CBP. In this official capacity, Defendant Magnus is responsible for the oversight of CBP's collection of additional Section 301 tariffs imposed under List 3 and List 4A.

## STANDING

12.     Plaintiff has standing to commence this action because it has been, and continues to be, "adversely affected or aggrieved by agency action within the meaning of" the Administrative Procedure Act (hereinafter, "APA").  5 U.S.C. § 702; *see also* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

13.     The additional tariffs imposed by Defendants pursuant to Lists 3 and/or 4A adversely affected and aggrieved Plaintiff because it was required to pay them.  Plaintiff has paid these unlawful duties on various entries of Chinese-origin products made within the prescribed statute of limitations period.

## TIMELINESS

14.     Plaintiff has timely commenced this action, "within two years after the [underlying] cause of action first accrue[d]."  28 U.S.C. § 2636(i).

15.     This action, brought under 28 U.S.C. § 1581(i)(1), contests Defendants' actions that resulted in the imposition of List 3 and List 4A additional tariffs.  Plaintiff's payments of such tariffs, illegally imposed by Defendants, are the events that caused this action to accrue, and they occurred within two (2) years prior to the filing of this action.

16.     In the alternative, Plaintiff's cause of action accrued at the time when its entries subject to List 3 and/or List 4A tariffs were liquidated by CBP, as liquidation is the final assessment of duties.  19 C.F.R. § 159.1.

## **RELEVANT LAW**

17.     Under Section 301 of the Trade Act, USTR is authorized to investigate a foreign country's trade practices and take "appropriate and feasible" action, such as imposing "duties or other import restrictions on the goods of . . . such foreign country," if its investigation reveals any unfair practice conducted by such country. *Id*. at §§ (b), (c)(1)(B).

18.     Further, Section 304 of the Trade Act requires USTR to determine "what action, if any," to take, within "12 months after the date on which the investigation is initiated."  19 U.S.C. § 2414(a)(1)(B), (2)(B).

19.     In pertinent part, Section 307 of the Trade Act allows USTR to "modify or terminate" an action taken pursuant to Section 301 either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's policies and practices has "increased or decreased" or when the action "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(B), (C).

20.     Finally, the Constitution of the United States vests in Congress the power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States.  U.S. Constitution, Article I, Section 8, Clause 1.  In addition, the Due Process Clause of its Fifth Amendment provides that "No person shall… be deprived of life, liberty, or property, without due process of law."  U.S. Constitution, Amendment V.

/ / /

/ / /

**PROCEDURAL HISTORY**

**I.**     **USTR's Investigation and the Imposition of List 1 and List 2 Additional Tariffs**

21.     On August 14, 2017, then-President Donald J. Trump directed then-Ambassador Robert E. Lighthizer, in his official capacity as U.S. Trade Representative, to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to President Trump, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation."  *Id.*

22.     Four days later, on August 18, 2017, USTR formally initiated the Section 301 Investigation.  *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 82 Fed. Reg. 40,213 (Aug. 24, 2017).

23.     On March 22, 2018, seven months after formally initiating the Investigation, USTR published a report announcing its results.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), available at

https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF (hereinafter, the "Report").

The Report concludes that the investigated practices of the Chinese government are unreasonable and discriminatory and burden or restrict U.S. commerce. *Id*. at 17, 47. USTR did not quantify the burden or restriction imposed on the U.S. commerce by the investigated practices in its Report.

24. Instead, on the same date, USTR also published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet (hereinafter, the "Fact Sheet"). In its Fact Sheet, USTR also indicated it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value **commensurate with the harm** caused to the U.S. economy resulting from China's unfair policies." *Id*.; *see also Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (emphasis added).

25. Between April and August 2018, within the 12-month statutory deadline provided for under Section 304 of the Trade Act and in response to the findings made by USTR in its Section 301 Investigation, Defendants imposed additional tariffs on imports from China, which ultimately came to be known as List 1 and List 2.

26. Specifically, on April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin," covering products with approximately $50 billion of estimated annual trade value in 2018. *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section*

*301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).

27.     The products on the proposed list covered 1,333 tariff subheadings, with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id*. at 14,907.  USTR explained that it chose $50 billion because that amount was "**commensurate** with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr (emphasis added).

28.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*—that is, the so-called "List 1."  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018, notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion," but that it would impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 Investigation.  *Id*. at 28,711.  Accordingly, USTR also announced a proposed "List 2" covering 284 tariff subheadings, with "an approximate annual trade value of $16 billion."  *Id*. at 28,711-12.

29.     The List 1 additional tariffs went into effect on July 6, 2018.

30.     On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem*, comprising "279 tariff subheadings" with an "annual trade value" of $16 billion— that is, the so-called "List 2." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

31.     The List 2 additional tariffs went into effect on August 23, 2018.

## II.     The Imposition of List 3 and List 4A

32.     Shortly after USTR announced the results of its Section 301 Investigation and its intent to impose List 1 and List 2 additional tariffs on various Chinese-origin goods, China announced its intention to "immediately introduce taxation measures of the same scale and strength" on U.S. goods. *See* Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, The Hill (June 15, 2018), available at

https://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods.

33.     In response to China's threat of retaliation and before List 1 and List 2 were finalized (and even before they came into effect), President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, Sta*tement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), available at

https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

34.     China followed through with its retaliation threats and imposed its own 25% *ad valorem* tariffs on $50 billion in U.S.-origin goods, implemented in two stages of $34 billion and $16

billion on the same dates as the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

35.     In direct response to China's retaliation and unrelated to the findings made by the USTR in its Investigation against China's technology transfer, intellectual property, or innovation policies, Defendants intentionally and drastically expanded the scope of the tariffs initially imposed under List 1 and List 2, culminating with additional tariffs being imposed on Chinese-origin products worth more than $500 billion—ten (10) times the amount it had deemed "commensurate" with the original findings of its Investigation.

36.     Specifically, on June 18, 2018, before USTR implemented Lists 1 and 2, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion.  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), available at [https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-regarding-trade-china-2/](https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-regarding-trade-china-2/).  President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision.  *Id.* ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods.  This is unacceptable.").

37.     Further, complying with President Trump's direction, USTR stated that it would adopt the newly proposed tariffs in response to China's threatened retaliatory measures, rather than as a measure against the harms caused by China's practices identified in its Section 301 Investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), available at

https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 Investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

38.     In this context, on July 17, 2018, shortly after the List 1 additional tariffs went into effect, but before List 2, USTR issued its proposal to impose duties on additional Chinese-origin products.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 33,608, 33,609 (July 17, 2018).  The initial deadlines applying to USTR's "supplemental action" were August 17, 2018, for initial comments; August 20-23, 2018, for a public hearing; and August 30, 2018, for rebuttal comments.  *Id*. at 33,608.

39.     In support of its "supplemental action," USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate."  *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(C)).  However, in its July 17, 2018, notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices").  USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced

retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id*. (also stating that, because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Indeed, USTR made no reference to the original subject of its 301 Investigation, nor did it explain how the newly proposed additional tariffs related or were connected in any way to China's intellectual property and/or forced technology transfer policies and practices. *Id.*

40. USTR's contemporaneous press statements further corroborated the contents of its notice: China's retaliatory tariffs motivated its proposed action, rather than its investigated practices. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative (stating that the proposed action came "[a]s a result of China's retaliation and failure to change its practice.").

41. Furthermore, in the days and weeks immediately following, President Trump made various public statements clearly suggesting that the main motivation for imposing the additional tariffs under List 3 was reducing the United States' massive trade imbalance between the United States and China. *See, e.g.,* @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), available at https://media-cdn.factba.se/realdonaldtrump-twitter/1020287981020729344.jpg;[1]

---

[1] This complaint follows substantially similar complaints filed in September and October 2020 and currently pending before this Court. *See In Re Section 301 Cases*, Court No. 21-cv-00052-3JP. At that time, President Trump's official Twitter account, "@realDonaldTrump," was an active Twitter account. However, on January 8, 2021, Twitter permanently suspended President Trump's account, causing all past Tweets posted under such account to be removed from the website and no longer available to the public. To date, the National Archives and Records

@realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), available at https://media-cdn.factba.se/realdonaldtrump-twitter/1020290163933630464.jpg; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), available at https://media-cdn.factba.se/realdonaldtrump-twitter/1022079127799701504.jpg; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), available at https://media-cdn.factba.se/realdonaldtrump-twitter/1022074252999225344.jpg.

42.     Acting pursuant to President Trump's pressure (rather than direction, as permitted under Section 301), on August 1, 2018, USTR issued a statement that it had been directed by the President to consider increasing the proposed List 3 additional tariffs from 10% to 25% *ad valorem*, because "[r]egrettably [China] has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative. USTR's formal notice followed on August 7, 2018. *See Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760 (Aug. 7, 2018). Once again, USTR's August statement and notice made no reference to China's intellectual property and/or forced technology transfer policies and practices—the subject of the Section 301 investigation—or any change, increase or decrease, in USTR's original calculation of the

---

Administration does not have records of these Tweets. Consequently, all references herein are to a third-party site on which those Tweets have been stored for public review.

economic harm to U.S. commerce caused by those unfair trade practices, to justify the imposition of the additional tariffs under List 3.

43.     At the same time, USTR adjusted the deadlines originally proposed, assigning six (6) days for a public hearing (ending on August 27, 2018) and making September 6, 2018, the new deadline for both initial and rebuttal comments from the public.  83 Fed. Reg. at 38,761.  *See also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.  USTR also limited each hearing participant to five minutes.  *Id.*  The adjustments prevented both USTR and the public from considering initial comments at the hearing and left insufficient time for interested parties to properly review and respond to the initial comments filed by other parties.  Notwithstanding, approximately 350 witnesses managed to appear at the six-day hearing and the public submitted 6,226 comments.  *See* Docket No. USTR-2018-0026, *Request for Public Comment Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* available at https://www.regulations.gov/docket/USTR-2018-0026.

44.     Merely eleven (11) days after holding a 6-day hearing and receiving over 6,000 comments from the public, on September 17, 2018, President Trump announced that he had directed USTR to impose 10% additional tariffs on $200 billion of imports from China.  THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018),available at https://trumpwhitehouse.archives.gov/briefings-statements/statement-from-the-president-4/.

President Trump explicitly linked the additional "List 3" tariffs to China's decision to "impose new tariffs in an effort to hurt the United States economy." *Id.*

45. On September 21, 2018, within days after President Trump's announcement, but more than 12 months after the initiation of the Investigation, USTR published the next list of affected products subject to the additional tariffs—the so-called "List 3." 83 Fed. Reg. at 47,974. Notably, USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

46. As legal justification for its action, USTR invoked, for the first time, Section 307(a)(1)(B) of the Trade Act, which allows USTR to "modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." 19 U.S.C. § 2417(a)(1)(B) (brackets omitted). In addition, USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." 83 Fed. Reg. at 47,975.

47. The List 3 additional tariffs went into effect on September 24, 2018, covered 5,745 tariff subheadings of $200 billion worth of Chinese-origin goods, and were initially set at 10% *ad valorem*, with an increase to 25% scheduled for January 1, 2019. 83 Fed. Reg. at 47,974.

48. In the months that followed, the United States and China attempted to resolve their trade-related differences through negotiations, but ultimately those negotiations fell apart.

49.     Consequently, on May 9, 2019, USTR announced its intent to raise the tariff rate on List

3 goods from 10% to 25%, effective either May 10, 2019, or June 1, 2019, depending on the day

of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and*

*Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg.

20,459 (May 9, 2019); *see also Implementing Modification to Section 301 Action: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

84 Fed. Reg. 21,892 (May 15, 2019).  Unlike with its past impositions of new tariffs, USTR did

not seek public comment, but simply announced that the increase would occur.  84 Fed. Reg. at

20,459.

50.     Roughly one (1) week later, on May 17, 2019, USTR announced its intention to proceed

with the implementation of yet another round of Section 301 tariffs—the so-called "List 4."

*Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).  Once again, USTR's rationale for List

4 was not China's policies with respect to technology transfer, intellectual property, or

innovation, but instead further retaliation due to China's "retreat[] from specific commitments

made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against

U.S. commerce."  *Id*.

51.     As with the imposition of List 3, USTR held a public hearing and invited comments on

the proposed List 4.  84 Fed. Reg. 22,564.  The timeline for participation in the hearing and the

submission of comments was once again constrained, leaving little room for meaningful

participation:  USTR required witnesses to submit drafts of their testimony by June 13, 2019,

four days before the deadline for fully developed written comments (which was only a month

after List 4 was proposed), and then it continued to limit witnesses' testimony to five minutes. Nonetheless, the public submitted nearly 3,000 comments. *See* Docket No. USTR-2019-0004, *Request for Public Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* available at https://www.regulations.gov/docket/USTR-2019-0004. Despite these limitations, USTR received 2,940 comments and heard testimony from over 300 witnesses, the majority of which opposed the imposition of the proposed List 4 additional tariffs. *Id.; see also* 84 Fed. Reg. at 43,304.

52.     On August 20, 2019, more than 12 months after the initiation of its Section 301 Investigation, USTR issued a final notice announcing the implementation of List 4 additional tariffs in two tranches: (1) "List 4A," imposing a 10% *ad valorem* tariff on goods worth roughly $120 billion, effective September 1, 2019; and "List 4B," imposing a 10% *ad valorem* tariff on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. 84 Fed. Reg. at 43,304, 43,305.

53.     To justify this new round of additional tariffs, USTR again relied on Section 307(a)(1)(B) and (C). 84 Fed. Reg. at 43,304. However, as with the imposition of List 3, USTR did not even attempt to claim that China's practices—the subject to its Section 301 Investigation—had resulted in an increased burden on the U.S. commerce; instead, it merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id*. Furthermore, USTR again failed to address any of the nearly 3,000 comments submitted by interested parties or the

testimony provided by witnesses; it simply made a hollow statement that its determination "takes account of the public comments and the testimony." 84 Fed. Reg. at 43,305.

54.     On August 30, 2019, only two (2) days before the additional tariffs imposed under List 4A were to take effect, USTR published a notice of its decision to increase the tariff rate applicable to goods covered by both List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id*.

55.     Starting in June 2019, USTR invited the public to seek product-based exclusions from the additional tariffs imposed by Lists 3 and 4A—admittedly due to recognizing that these additional tariffs have caused and will continue to cause substantial harm to U.S. companies and consumers, as well as the U.S. economy. *See Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019); *see also Procedures for Requests to Exclude Particular Products from the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (Oct. 24, 2019). USTR granted a limited number of exclusions, on a rolling basis, through June 19, 2020, for List 3 and August 5, 2020, for List 4A. *Notice of Product Exclusion and Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 85 Fed. Reg. 38,000 (June 24, 2020), *Notice of Product Exclusions and Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,627 (Aug. 11, 2020).  None of the granted exclusions applied to Plaintiff's subject entries.

56.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published a notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019).  USTR also advised that it intended to reduce the tariff rate applicable under List 4A—an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

57.     Despite the limited trade deal between the United States and China, the additional tariffs imposed under Lists 3 and 4A remain in effect as of the date of this Complaint, while the proposed tariffs on products covered by List 4B remain suspended.

58.     USTR has *never* published any explanation or provided any evidence as to how the List 3 or List 4A additional tariffs were related to the original purpose and subject of its Section 301 Investigation: China's policies and practices regarding intellectual property and technology transfer.  To the contrary, President Trump's contemporaneous public statements consistently characterized the List 3 and List 4A additional tariffs as generating revenue for the U.S. Treasury; indeed, President Trump repeatedly affirmed that the additional tariffs collected under List 3 and List 4A have generated a significant amount of revenue for the U.S. government.  *See,*

*e.g.,* @realDonaldTrump, TWITTER (November 29, 2018), available at https://media-cdn.factba.se/realdonaldtrump-twitter/1068120444279103488.jpg ("Billions of [d]ollars are pouring into the coffers of the U.S.A. because of the [t]ariffs being charged to China. … Otherwise, lets [sic] just make our [c]ountry richer than ever before!"); *see also* Politifact (The Poynter Institute), *US Farmers are receiving $16 billion 'out of the tariffs that we've gotten from China'" (*August 2, 2019), available at

https://www.politifact.com/factchecks/2019/aug/02/donald-trump/no-china-not-paying-us-farmers-16b-through-tariffs/ ("Aid to American farmers was paid for by "giving [them] $16 billion out of all the tariffs we're collecting." . . . "We've gotten tens of billions of dollars in tariffs from China." . . . "The US government is taking in billions and billions of dollars in the form of tariffs from China."); *Charles Benson chats one-on-one with President Trump* (July 12, 2019), available at https://www.youtube.com/watch?v=xFfsDj9Lhds.

## III.  **World Trade Organization Dispute**

59.    On September 15, 2020, the World Trade Organization (hereinafter, the "WTO") determined that the United States' 25% tariffs on over $200 billion in Chinese goods imposed under List 3 violated the most favored nation provision of the General Agreement on Tariffs and Trade of 1994 (hereinafter, "GATT 1994"), 1867 U.N.T.S. 187, by unfairly targeting Chinese products alone.  *Panel Report, United States—Tariff Measures on Certain Goods from China*, WTO Doc. WT/DS543/R (Sept. 15, 2020).

60.    WTO's ruling against the United States further determined that the United States failed to demonstrate how the identified "public morals objective" relating to misappropriation of intellectual property and unfair competition justified the imposition of the tariffs.  *Id.*

/ / /

# STATEMENT OF CLAIMS

## COUNT ONE

## (VIOLATION OF THE TRADE ACT OF 1974-DECLARATORY JUDGMENT)

61. Paragraphs 1 through 60 are hereby incorporated by reference as if fully set forth herein.

62. The Declaratory Judgment Act, codified at 28 U.S.C. § 2201(a), authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

63. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the imposition of additional tariffs under List 3 and 4A.

64. Specifically, under Section 301 of the Trade Act, USTR may impose tariffs against a foreign country's goods when it determines that "an act, policy, or practice of [that] foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR's adoption of List 3 and List 4A additional tariffs was not in response to any such determination.

65. In its Report and accompanying Fact Sheet, USTR calculated the burden or harm to U.S. commerce caused by China's intellectual property and technology transfer policies and practices—which were the subject of its Section 301 Investigation—to be approximately $50 billion dollars. *See* Report and Fact Sheet. USTR further determined that the "commensurate" action to take in response to China's unfair practices was the imposition of additional tariffs on certain goods imported from China, valued at approximately $50 billion dollars annually—which it did under List 1 and List 2. *See* notices of final determination for List 1 and List 22, 83 Fed. Reg. 28,710 (June 20, 2018), 83 Fed. Reg. 40,823 (Aug. 16, 2018).

66.    Conversely, USTR's notices announcing the imposition of additional tariffs under List 3 and List 4A stated that these supplemental actions were a "modification" of its prior actions (resulting in the imposition of List 1 and List 2), but provided no explanation to support its alleged modification that would justify the imposition of two (2) new rounds of additional tariffs, nor did it revise the initial calculation of $50 billion in burden and harm to U.S. commerce caused by China's unfair practices.  In fact, the only stated reason was responding to the retaliatory tariff measures imposed by China on U.S. goods.  *See, e.g.*, 83 Fed. Reg. 40,823 (Aug. 16, 2018) and 84 Fed. Reg. 43,304 (Aug. 20, 2019).

67.    Further, under Section 304 of the Trade Act, USTR must determine "what action, if any," to take, within "12 months after the date on which the investigation is initiated."  19 U.S.C. §§ 2414(a)(1)(B), (2)(B).  USTR adopted the List 3 and List 4A additional tariffs well over the 12-month deadline—the notices imposing the List 3 and List 4A additional tariffs were published on September 21, 2018, and August 20, 2019, respectively—whereas the initiation of its Section 301 Investigation took place on August 18, 2017.

68.    Finally, under Section 307 of the Trade Act, USTR may "modify or terminate" an action taken pursuant to Section 301 if the burden imposed on U.S. commerce by the investigated conduct increases or decreases or if its initial action "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(B), (C).  However, Section 307 of the Trade Act does not authorize Defendants to increase the amount of or to expand the scope of goods subject to the additional tariffs imposed under the original action for reasons unrelated to the subject matter of such action; nor does it allow Defendants to increase said tariffs when the original action is deemed no longer "appropriate"—Defendants may only delay, taper, or terminate their action.  USTR's authorization to act under Section 301 is not open-ended; rather, in order to modify or terminate

an action originally carried out under Section 301(b), USTR must first conduct an additional investigation and make a determination consistent with Section 304(a)(2). USTR failed to do so with respect to List 3 and List 4A. Instead, its List 3 and List 4A tariffs were unrelated to and went far beyond the scope and extent of its initial Section 301 investigation.

69. Accordingly, because Defendants' actions imposing the List 3 and List 4A tariffs were not authorized by Section 301 of the Trade Act, Plaintiff is entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and 4A are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

70. Paragraphs 1 through 69 are hereby incorporated by reference as if fully set forth herein.

71. The Administrative Procedures Act, codified at 5 U.S.C. § 702 *et seq.*, authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

72. For the reasons set forth in Count One, Defendants' actions leading to the imposition of List 3 and List 4A were "not in accordance with law" and "in excess of statutory . . . authority."

73. Defendants' adoption of List 3 and List 4A additional tariffs was also "arbitrary and capricious," because they failed to provide a sufficient opportunity for the public to comment on the proposed actions, did not meaningfully consider relevant factors when making their decisions, ignored thousands of comments and testimony submitted by the public, and refused to adequately explain its rationale for imposing the additional tariffs under List 3 and List 4A.

74.     Further, Defendants failed to support their actions leading to the adoption of List 3 and List 4A by substantial evidence for any asserted "increased burden" from China's intellectual property policies and practices, which were the subject of their underlying Section 301 Investigation.

75.     Consequently, because Defendants' failure to comply with the requirements of the APA throughout the entire process of proposing and ultimately implementing and collecting the List 3 and List 4A additional tariffs rendered such tariffs unlawful, the Court should set aside Defendants' actions leading up to and culminating with the adoption of Lists 3 and 4A.  5 U.S.C. § 706.

## COUNT THREE

## (VIOLATION OF ARTICLE 1 OF THE U.S. CONSTITUTION)

76.     Paragraphs 1 through 75 are hereby incorporated by reference as if fully set forth herein.

77.     The U.S. Constitution enumerates the separate powers each branch of the government is granted with.  *See generally* U.S. Constitution.  Among others, Congress has been assigned the exclusive power to "lay and collect taxes, duties, imposts and excises."  U.S. Constitution, Article 1, Section 8, Clause 1.

78.     From President Trump's contemporaneous statements instructing and directing USTR to implement Lists 3 and 4A under the appearance of a Section 301 investigation, it is clear that at least one key reason, if not the principal reason, for imposing such additional tariffs was to collect revenue for the federal treasury.

79.     The measures that the President and USTR are authorized to take in response to a Section 301 investigation do not include levying and collecting revenue in the form of Customs duties, even if such collection of revenue is "labelled" as compensation for collateral economic harm

identified through an otherwise authorized action, such as the one taken by USTR into China's intellectual property and forced technology transfer policies and practices resulting in the imposition of List 1 and List 2 additional tariffs—particularly when the amount collected far exceeds the economic harm so calculated by USTR itself.

80.     Accordingly, because revenue collection is Congress' exclusive prerogative, and not the President's, let alone USTR's, the additional tariffs imposed by Defendants under List 3 and List 4A are also unconstitutional.

## COUNT FOUR

## (VIOLATION OF THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION)

81.     Paragraphs 1 through 80 are hereby incorporated by reference as if fully set forth herein.

82.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall… be deprived of life, liberty, or property, without due process of law." U.S. Constitution, Amendment V.

83.     Before adopting List 3 and List 4A, Defendants failed to provide Plaintiff with a sufficient opportunity for comment, as well as a sufficient opportunity to present its views on those proposed additional tariffs in a hearing (and have those views meaningfully considered by agency decisions-makers). Defendants also failed to consider relevant factors when making their decisions and did not adequately explain their rationale for imposing additional tariffs on Chinese-origin products covered under List 3 and List 4A.

84.     Thus, because Defendants failed to observe and provide Plaintiff with the procedural safeguards afforded to it under the Due Process Clause of the Fifth Amendment of the U.S. Constitution, its predetermined decision-making to impose tariffs under List 3 and List 4A is unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court

(1)     hold that Defendants' actions resulting in additional tariffs applicable to products covered by List 3 and List 4A are unauthorized by, and contrary to, the Trade Act of 1974;

(2)     hold that Defendants arbitrarily and unlawfully promulgated List 3 and List 4A, in violation of the Administrative Procedure Act;

(3)     hold that Defendants unlawfully promulgated List 3 and List 4A, in violation of the United States Constitution;

(4)     vacate Defendants' List 3 and List 4A rulemakings;

(5)     order Defendants to refund, with applicable interest, any and all duties and other charges or exactions paid by Plaintiff pursuant to List 3 and/or List 4A;

(6)     permanently enjoin Defendants from applying List 3 and/or List 4A against Plaintiff and from collecting any duties from Plaintiff pursuant to List 3 and/or List 4A;

(7)     award Plaintiff its costs and reasonable attorney fees; and

(8)     grant such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

*/s/ Robert W. Snyder*
ROBERT W. SNYDER
LAURA A. MOYA
**LAW OFFICES OF ROBERT W. SNYDER**
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com
lmoya@rwsnyderlaw.com

Dated: **January 18, 2022**
Irvine, CA

*Counsel for Plaintiff*
*STREETSTRIDER INTERNATIONAL, LLC.*

# CERTIFICATE OF SERVICE

Pursuant to Rules 4(b), (h), (k), and (l) of the Rules of the United States Court of

International Trade, I hereby certify that on January 19, 2022, copies of Plaintiff's Summons and

Complaint filed in this action were served on the following parties by certified mail, return

receipt requested:

**Attorney-In-Charge**
International Trade Field Office
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Room 346
New York, NY 10278

**Attorney-In-Charge**
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

**General Counsel Greta Peisch**
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

**Chief Counsel Scott K. Falk**
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., Suite 4.4-B
Washington, DC 20229

*/s/ Robert W. Snyder*
ROBERT W. SNYDER
LAURA A. MOYA

*Counsel for Plaintiff*
*STREETSTRIDER INTERNATIONAL, LLC*